UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00238-MOC-DSC

| | | |
|---|---|---|
| **DOUGLAS R. SMITH, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MEMORANDUM OF DECISION |
| | ) | and |
| Vs. | ) | ORDER |
| | ) | |
| **AVERY CHAPMAN, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on Defendant Taryn Hartnett's Motion for Summary

Judgment (#89) as to Plaintiff's claims against her made pursuant to the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Counts I, III-IV of the Complaint

(#1)). Having considered the matter and reviewed the pleadings, and for the reasons stated

herein, the court will grant Defendant Hartnett's Motion for Summary Judgment on those RICO

claims.

## I.    INTRODUCTION

Given that the facts and parties in this case are extensive, the court will only provide a

summary of those relevant to the matter currently before the court.

Plaintiffs Douglas Smith and Mary Luczak-Smith, and DRS Family Management, Fortis,

Smith Clovis, Clovis, Smith and Sons (all entities founded and/or controlled by Mr. Smith)

initiated this action in May 2014 against Avery Chapman, his wife Taryn Hartnett, and Chapman

Legal Group (Mr. Chapman's law firm). See (Complaint, #1). The Smiths principally divide

their time between Charlotte, North Carolina and Wellington, Florida. (Id. at p. 3). Mr. Chapman

and Ms. Hartnett live in Florida and Mr. Chapman's law office is in Florida. (Id. at p. 4). By 2011, Mr. Chapman was performing substantial legal work for Plaintiffs and other entities associated with Mr. Smith. (Affidavit of Douglas Smith, #112-3 Exhibit A at p. 3). By 2012, and through March 6, 2014, Mr. Chapman was handling virtually all legal matters for Mr. Smith and his related entities. (Id.; 4/27/15 Deposition of Avery Chapman, #112-5 Exhibit D). Ms. Hartnett allegedly furthered these relationships, both socially and professionally, by working for several of Mr. Smith's business entities and maintaining a longstanding friendship with Ms. Luczak-Smith. (4/29/15 Deposition of Taryn Hartnett, #112-3 Exhibit B at p. 4). Ms. Hartnett is a former Bank of America executive with significant business experience. (Corrected Amended Answer, Affirmative Defenses, and Counterclaims of Taryn Hartnett (#100) at p. 16; Affidavit of Douglas Smith, #112-3 Exhibit A at p. 10).

Of additional importance to the claims at issue is the fact that Mr. Smith has a settled trust called DRS 2011 Family Trust, which funds many of the entities at issue in this case, including several companies for which Ms. Hartnett at one time or another served as CEO (GroceryPal LLC, later named AltPay; Vitality Health Systems LLC; and CompleteRX Solutions LLC), as well as Physicians Choice Laboratory Service ("PCLS"), a laboratory testing company. (Affidavit of Douglas Smith, #112-3 Exhibit A at ¶25; Corrected Amended Answer, Affirmative Defenses, and Counterclaims of Taryn Hartnett (#100) at p. 17-18; 20).

**A. Legal Claims Asserted**

Plaintiffs allege that unbeknownst to them, beginning in 2012 and continuing through March 2014, Mr. Chapman was secretly, and without authorization, misappropriating money from Plaintiffs. Plaintiffs allege that Mr. Chapman improperly overdrew funds from a trust

account ("Trust Account") set up by Plaintiff for the purpose of making monthly payments to Mr. Chapman for legal services. (Complaint, #1, at ¶45-53; Affidavit of Douglas Smith, #112-3, Exhibit A at p. 7-9). Mr. Smith funded this account; Mr. Chapman had exclusive direct control over transfer of funds out of the Trust Account. (Affidavit of Douglas Smith, #112-3, Exhibit A at p. 7-9). Plaintiffs allege that Mr. Chapman used Trust Account funds to directly pay his personal American Express bills, and buy personal items such as two BMWs, horse trailers, and polo club fees, which benefitted both Mr. Chapman and Ms. Hartnett. (Id.; Complaint, #1, at ¶45-55; 4/29/15 Deposition of Taryn Hartnett, #112-3 Exhibit B at p. 9-16). Plaintiffs also allege that Mr. Smith made a $600,000 loan to Mr. Chapman for the purchase a residence, for which he now seeks repayment. (Complaint, #1, at ¶30-32; Affidavit of Douglas Smith, #112-3 Exhibit A at ¶15-16). The parties agree that no documentation related to the terms of this loan was ever made by either Mr. Chapman or Mr. Smith. (Id.; 4/27/15 Deposition of Avery Chapman, #112-5 Exhibit D at p. 14).

By their complaint, Plaintiffs assert four civil RICO claims against Defendants (only three as to Ms. Hartnett). Such claims largely derive from the unauthorized appropriation of funds from the Trust Account. Plaintiffs also assert claims for fraud, civil conspiracy to commit fraud, conversion, breach of fiduciary duty, constructive fraud, action for accounting, violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq., and unjust enrichment (12 counts in total). As to the matter currently before the court, Defendant Hartnett seeks summary judgment on the RICO claims asserted against her.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In the end, the

question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 252.

### III.    RICO STANDARDS

Plaintiffs have asserted three claims against Defendant Hartnett pursuant to RICO. <u>See</u> (Complaint (#1), Counts I, III, IV). The claims are, generally, rooted in facts related to Mr. Chapman's alleged unauthorized withdrawals from the Trust Account. As to Ms. Hartnett, the allegations are limited to assertions that she traveled to North Carolina with the intent to promote the unlawful conversion of Plaintiff's funds and that she benefitted from the unauthorized Trust Account withdrawals by virtue of her husband buying things for her.

RICO's civil provision, 18 U.S.C. § 1964, provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." <u>Id.</u> Plaintiff alleges that Defendant Hartnett violated § 1962(a), (c), and (d). Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce. <u>Id.</u> Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conduct[ing] or participat[ing] ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." <u>Id.</u>  Finally, section 1962(d) prohibits any person from "conspir[ing] to violate any of the provisions of subsections (a), (b), or (c)." <u>Id.</u>

Case law has established specific requirements for claims brought under these subsections. To allege a violation of § 1962(a), a plaintiff must show: (1) receipt of income from a pattern of racketeering activity, and (2) the use or investment of this income in an enterprise. <u>Busby v. Crown Supply, Inc.</u>, 896 F.2d 833, 837 (4th Cir. 1990). As to § 1962(c), a plaintiff must show:

"(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." <u>Sedima, S.P.R.L. v.</u>

<u>Imrex Co.</u>, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985) (internal citations omitted). As for a RICO

conspiracy claim under § 1962(d), a plaintiff must show "that each defendant knowingly and

intentionally agreed with another person to conduct or participate in the affairs of the enterprise;

and ... that each defendant knowingly and willfully agreed that he or some other member of the

conspiracy would commit at least two racketeering acts." <u>United States v. Mouzone</u>, 687 F.3d

207, 218 (4th Cir. 2012).

Under RICO, an "enterprise" includes "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise is characterized by

"continuity, unity, shared purpose and identifiable structure." <u>United States v. Fiel</u>, 35 F.3d 997,

1003 (4th Cir.1994) (citation omitted). "Racketeering activity" is defined as "any

act or threat" involving specified state law crimes, or an "act" indictable under various federal

statutes, such as mail and wire fraud. <u>See id.</u> § 1961(1)(B). A "pattern" of racketeering requires

at least two predicate acts committed within a ten year period. See <u>id.</u> § 1961(5). "These

requirements are designed to prevent RICO's harsh sanctions, such as treble damages, from

being applied to garden-variety fraud schemes." <u>ePlus Tech., Inc. v. Aboud</u>, 313 F.3d 166, 181

(4th Cir. 2002).

## IV. ANALYSIS OF RICO CLAIMS ON SUMMARY JUDGMENT

The court finds that based on the record as a whole, with particular attention to the

evidence cited by the parties at this stage in the proceedings, summary judgment is appropriate as

to the RICO claims against Ms. Hartnett.

**A. Count One—Violation of 18 U.S.C. § 1962(a)**

By their first count against Ms. Hartnett, Plaintiffs allege that she violated 18 U.S.C. § 1962(a), which provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code[1] to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Id. In other words, § 1962(a) "prohibits a person who has received income derived from a pattern of racketeering activity from using the income in the operation of an enterprise engaged in commerce." New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1165 (4th Cir. 1994). As noted above, to allege a violation of § 1962(a), a plaintiff must show: (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise. Busby v. Crown Supply, Inc., 896 F.2d 833, 837 (4th Cir. 1990).[2] "Under the clear language of [§ 1962(a)], the person who receives and invests the 'racketeering' income must have participated as a principal in the racketeering activities." Brady v. Dairy Fresh Products Co., 974 F.2d 1149, 1152 (9th Cir. 1992); accord Genty v. Resolution Trust Corp., 937 F.2d 899, 908 (3d Cir. 1991). Additionally, a violation of this section requires a culpable state of

---

1 18 U.S.C. § 2 provides:
    (a)Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2 At this stage in the proceedings, the court refrains from making a finding on whether, as Plaintiffs allege, the Chapman-Hartnett union and Chapman Law are "enterprises" within the meaning of the statute, but will assume *arguendo* that they qualify as such for the purpose of this Order.

mind. See Genty v, 937 F.2d at 908 ("a liable person who receives and invests RICO-generated income must have participated as a principal in the underlying racketeering activity…. participation as a principal requires possession of the specific intent associated with the various underlying predicate offenses."); Club Car, Inc. v. Club Car (Quebec) Imp., Inc., 276 F. Supp. 2d 1276, 1290 (S.D. Ga. 2003) aff'd, 362 F.3d 775 (11th Cir. 2004) (finding that even if a defendant had indirectly derived income from racketeering behavior, no liability attached where he did not participate in the underlying racketeering activity).

Plaintiffs argue that a genuine issue of material fact exists on this claim as to whether Ms. Hartnett derived income from the predicate acts and whether she used or invested such income in an enterprise. As evidence in support of their opposition to summary judgment, Plaintiffs cite the following:

1. Ms. Hartnett testified that she knew that funds had been transferred from the Trust Account in July 2012 for the purchase of a horse that came to belong to Ms. Hartnett. (April 29, 2015 Deposition of Taryn Hartnett (hereinafter "Hartnett Depo." (excerpts at #113-2) at 248). However, the court notes that Ms. Hartnett also testified that she did not know that the funds had come from the Trust Account until after March 7, 2014, the day before this lawsuit was filed. Id.

2. Regarding Hartnett's connection to the allegedly fraudulent scheme, Hartnett was designated by Chapman Law to be its Rule 30(b)(6) representative for several of the deposition topics—Chapman Law's trust and accounting procedures and all Chapman Law bank accounts from 2012 through April 30, 2015 and the flow of funds with respect to the same. (April 30, 2015 Rule 30(b)(6) Deposition of Chapman Law, by Taryn Hartnett (hereinafter "Hartnett 30(b)(6)") at 5:19-6:11). However, the court notes that Ms. Hartnett also testified that in order to prepare to testify on such matters, she undertook the review of the accounting and records in March 2014. Id. at 6:3-23. She also testified that before March 2014, her occasional work for Chapman Legal was "more in the capacity of an accountant who was assisting Mr. Chapman in handling legal matters, as opposed to an administrator" and that until after March 7, 2014, she "had never seen either the trust or the operating account." (Id. at 11:9-12; 11:19-22).

3. Hartnett testified that she was the person with the most knowledge of Chapman Law's trust and accounting procedures, and that she was the person with the most knowledge

about Chapman Law's bank accounts (and the flow of funds therein) from 2012 to present. (Hartnett 30(b)(6) at 8:1-16). However, as noted directly above, she has also testified that she had not seen the accounting for the trust or operating accounts until March 2014, that she learned about the Chapman trust and accounting procedures in connection with this lawsuit, and that she was brought on in March 2014 in order to go through the accounts and "figure out what was going on" after Mr. Smith filed this lawsuit accusing Mr. Chapman of misappropriating funds. (Id. at 11:19-12:11-16).

4. Hartnett has a Chapman Law e-mail address (Hartnett 30(b)(6) at 9:18-20), received a 1099 for work performed for Chapman Law in 2014 (Hartnett 30(b)(6) at 8:19-20), worked for Chapman Law prior to March 2014 in an accounting capacity (Hartnett 30(b)(6) 10:25-11:12), and received monies from Chapman Law for her health insurance (Hartnett 30(b)(6) at 9:8-11).

5. Hartnett conducted the review of Chapman Law's accounting in March 2014 when Smith terminated Chapman and Chapman Law (Hartnett 30(b)(6) 6:21-23). The court notes that when asked why she was selected to prepare the report in March 2014, Ms. Hartnett testified that she was "the person with the most fully-developed skill set in such matters associated in any way with the law group." (Id. at 7:20-25).

6. In the spring of 2014 after the events giving rise to this lawsuit occurred, Ms. Hartnett transferred title to the couples' house from both Chapman's and Hartnett's name to just the name of Hartnett. (Hartnett Depo. at 73:17-74:11).

See Pl. Resp. Def. Hartnett Mot. Summ. Judgment (#113 at p. 4-5).

In light of the evidence cited and the record as a whole, the court finds that the claim pursuant to § 1962(a) cannot stand. As discussed infra, there is no evidence to support a finding that Ms. Hartnett participated in a pattern of racketeering, which is fatal this claim. Additionally, even if Ms. Hartnett unknowingly and indirectly received income from a pattern of racketeering (by virtue of the items purchased for her by her husband), there is no evidence that she used or invested any such income in an enterprise engaged in commerce. See Chambers v. King Buick GMC, LLC, 43 F. Supp. 3d 575, 607 (D. Md. 2014) ("Plaintiff does not allege how much was invested or the contours of the reinvestment of the funds into the [alleged enterprise]…Without any specific details about how proceeds from the alleged racketeering activity were used to

establish or operate the [alleged enterprise], the allegations in the amended complaint do not present a plausible claim that Defendants violated Section 1962(a).”); <u>Busby v. Crown Supply, Inc.</u>, 896 F.2d 833, 837 (4th Cir. 1990).

Plaintiffs have done nothing more than show that Ms. Hartnett was married to Mr. Chapman, that she learned of the allegations against him and his law firm in March 2014, and that she used her business and accounting skills to assist Chapman Law in uncovering the amount of money owed to Mr. Smith. The evidence establishes that after Mr. Smith accused Mr. Chapman of misappropriating funds from the Chapman Law Trust Account, Ms. Hartnett, a former bank executive and knowledgeable businesswoman who had occasionally done work in the past for her husband's law firm, reviewed the Chapman Law accounts and discovered the amount of the financial imbalance. The fact that Ms. Hartnett occasionally assisted her husband in cases involving complicated accounting legal matters before this lawsuit, that she had an e-mail address associated with the firm, and that she became familiar with the accounting procedures of the firm upon the filing of this lawsuit ultimately fall short of material facts that would allow a jury to find that Ms. Hartnett received income from a pattern of racketeering activity, and used or invested this income in an enterprise. As to the transfer of the title of their house into solely Ms. Hartnett's name at a point in time after this lawsuit was filed, the court finds nothing suspicious about such a decision, and certainly does not find that it reflects any use or investment of income derived from racketeering activity in an enterprise engaged in commerce. Ms. Hartnett testified that she transferred the title in order to use the house as collateral to take out a loan under her name (as the spouse with the higher credit score), and thereby use that loan to pay back part of the funds owed by her husband to Mr. Smith. (Hartnett Depo at 71:17-74-15; 77:20-79-6).

Plaintiffs have come forward with no evidence to call such testimony into question, and the court finds that the fact that the house is now in Ms. Hartnett's name simply has no bearing on whether Ms. Hartnett violated 18 U.S.C. § 1962(a).

As noted above, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). The court finds that no genuine issues of material fact exist as to Count One against Ms. Hartnett and therefore will dismiss such claim.

### B.  Count Three—Violation of 18 U.S.C. § 1962(c)

18 U.S.C. 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id. For a claim under section 1962(c), a RICO plaintiff must prove that the defendant "conducted or participated in the conduct of the affairs of an enterprise engaged in interstate commerce through a pattern of racketeering activity." United States v. Norton, 17 Fed. Appx 98, 101 (4th Cir. 2001) (citing Salinas v. United States, 522 U.S. 52, 61 (1997)). Thus, section 1962(c) requires proof of: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The court finds that this claim must fail as to Ms. Hartnett because: 1) Plaintiffs have failed to show any involvement on her part in a pattern of racketeering activity; and 2) Plaintiffs have failed to identify any genuine issues of material fact on the conduct prong.

## 1. *Predicate Acts and Pattern of Racketeering Activity*

To establish the requisite predicate acts, the plaintiff must plead and prove each element of the alleged racketeering offenses. See Manual for Complex Litigation (Fourth), § 35.2 (2004); Zolfaghari v. Clott, No. CIV. H-87-2633, 1989 WL 90266, at *9 (D. Md. May 22, 1989) aff'd in part, rev'd in part sub nom ("a necessary ingredient of every successful RICO claim is an element of criminal activity."). "The plaintiff must demonstrate, with respect to a defendant, both that the defendant committed a predicate offense as delineated in Section 1961 and that the defendant had the requisite scienter for the underlying predicate offense." Interstate Flagging, Inc. v. Town of Darien, 283 F. Supp. 2d 641, 645 (D. Conn. 2003) (citing O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp., 751 F.Supp. 431, 434 (S.D.N.Y.1990)). Similarly, "the entity held liable under RICO must itself have been actively engaged in a pattern of racketeering." Qatar Nat. Navigation & Transp. Co. v. Citibank, N.A., No. 89 CIV. 0464 (CSH), 1992 WL 276565, at *5 (S.D.N.Y. Sept. 29, 1992) aff'd sub nom. Qatar Nat. Navigation & Transp. Co. v. Citibank, N.A., 182 F.3d 901 (2d Cir. 1999) (noting that while scienter may include recklessness, it does not extend to negligence). Specifically as to RICO cases where fraud is alleged, "[i]f multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them." Protter v. Nathan's Famous Sys., Inc., 904 F. Supp. 101, 106 (E.D.N.Y. 1995) (discussing heightened pleading standard of Rule 9(b)).

As to the pattern element, "simply proving two or more predicate acts is insufficient for a RICO plaintiff to succeed; instead, the RICO plaintiff must also show that the predicate acts are related and that they constitute or pose a threat of continued criminal activity." Al-Abood ex rel.

Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–39 (1989)). Plaintiff must additionally plead proximate cause, by showing injury in business or property "by reason of" the RICO violation. 18 U.S.C. § 1964; Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 6 (2010); Chambers v. King Buick GMC, LLC, 43 F. Supp. 3d 575, 588 (D. Md. 2014).

Here, in alleging a "pattern of racketeering activity" on the part of Defendants, Plaintiffs allege that Mr. Chapman committed wire fraud[3] (18 U.S.C. § 1343) and money laundering[4] (18 U.S.C. § 1957(a)). It further alleges that both Mr. Chapman and Ms. Hartnett committed interstate travel in aid of racketeering (18 U.S.C. § 1952(a)(3)), which makes it unlawful to travel in interstate commerce with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." Id. Specifically, the complaint alleges that "Mr. Chapman and Ms. Hartnett travelled between Florida and North Carolina, with the intent to promote unlawful activity (namely the fraudulent conversion of Plaintiff's funds)." See (Complaint (#1) at ¶ 68).

Upon review of the evidence put forth on summary judgment, the court finds that while Plaintiffs claim that Ms. Hartnett travelled to North Carolina with the intent to promote unlawful activity, they have not put forth any evidence to that effect. As a preliminary matter, Plaintiffs

---

3 18 U.S.C. § 1343 punishes anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," uses electronic wires "for the purpose of executing such scheme or artifice." Id. "To be convicted of … wire fraud, a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value. This specific intent to defraud is the only mens rea requirement for mail fraud and wire fraud." United States v. Wynn, 684 F.3d 473, 477-78 (4th Cir. 2012).

4 18 U.S.C. § 1957(a) makes it unlawful to "knowingly [engage] or [attempt] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." Id.

have not pointed to evidence of any specific dates of travel, let alone any incidents of travel that connect Ms. Hartnett to any sort of conduct at Chapman Law. While Ms. Hartnett's deposition indicates that she did indeed travel to Charlotte, North Carolina for reasons related to her work for Mr. Smith, there is not a scintilla of evidence that this travel was at all related to the conduct of business at Chapman Law or the alleged fraudulent scheme. Furthermore, there is no evidence even as to an implication of intent on Ms. Hartnett's part to commit this alleged predicate offense, nor sufficient evidence to allow a reasonable trier of fact to conclude that Ms. Hartnett was actively engaging in a pattern of racketeering. To the extent that the complaint alleges that Ms. Hartnett "performed unlawful activity, namely the violation of 18 § U.S.C. 1957(a)" (money laundering) in connection with her travel to North Carolina, the evidence does not remotely suggest that Ms. Hartnett took any part in the unauthorized withdrawals from the Trust Account or had any knowledge of them. Thus, the court finds that no rational trier of fact could find that Ms. Hartnett committed the predicate act of interstate travel in aid of racketeering, which is fatal to the RICO "pattern" requirement as to her. See Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 550 (S.D.N.Y. 2000) ("To plead a 'pattern of racketeering activity,' plaintiff must establish that each defendant committed at least two acts of racketeering—or two 'predicate acts'—within a ten-year period.").

Though the complaint does not explicitly allege that Ms. Hartnett committed the predicate act of wire fraud, Plaintiffs appear to argue by their briefing that Ms. Hartnett is somehow culpable by being "connected to" the fraudulent scheme by allegedly being aware of and benefitting from her husband's fraudulent wire transfers. See (Complaint, ¶ 55, 58, 65). In light of such argument, the court finds that Plaintiffs have not set forth any evidence to allow a

reasonable jury to find that Ms. Hartnett committed the alleged predicate act of wire fraud, which requires a showing of the existence of a scheme to defraud and use of wire communication in furtherance thereof. 18 U.S.C. § 1343; <u>United States v. Curry</u>, 461 F.3d 452, 457 (4th Cir. 2006). Here, there is no evidence that Ms. Hartnett took part in any scheme to defraud; the evidence quite clearly shows that she had no involvement in the withdrawals from the Trust Account or any other alleged fraudulent activity.

On this issue of predicate acts, Plaintiffs make much of the Fifth Circuit's statement in <u>Casperone v. Landmark Oil & Gas Corp.</u>, 819 F.2d 112, 115 (5th Cir. 1987) that, related to the pattern requirement of § 1962(c), "[u]nder RICO, a defendant need not personally commit the predicate acts provided that the evidence is sufficient to connect him to the fraudulent scheme." The court first notes that such a holding is not binding on this court, and in fact, has found disfavor in other courts (also not binding on this court). <u>See, e.g.</u>, <u>Basic Energy Servs., LP v. Pierce</u>, No. CV-09-31-BLG-RFC, 2013 WL 1390382, at *5 (D. Mont. Apr. 4, 2013) ("Van Hook is correct that the Second Amended complaint does not allege he personally committed any predicate acts. Accordingly, Count Nine, alleging a violation of § 1962(c) claim, must be dismissed as it relates to Van Hook."); <u>Blake v. Dierdorf</u>, 856 F.2d 1365, 1370–71 (9th Cir.1988) (dismissing RICO claim against a particular defendant where complaint "failed to allege adequately two or more predicate acts which would support a RICO claim"); <u>Lakonia Mgmt. Ltd. v. Meriwether</u>, 106 F. Supp. 2d 540, 550 (S.D.N.Y. 2000) ("To plead a 'pattern of racketeering activity,' plaintiff must establish that each defendant committed at least two acts of racketeering—or two 'predicate acts'—within a ten-year period.") (citing 18 U.S.C. § 1961(5)).[5]

---

5 The court also notes that in making such a finding in <u>Caspero</u>, the Fifth Circuit immediately thereafter cited <u>R.A.G.S. Couture, Inc. v. Hyatt</u>, 774 F.2d 1350, 1354 (5th Cir. 1985) and <u>United States v. Finney</u>, 714 F.2d 420,

Furthermore, even to the extent that the court were to accept Plaintiffs' proposition that Defendant Hartnett might be a proper RICO defendant so long as she is sufficiently "connected" to the fraudulent scheme, the court finds, as is reiterated throughout this decision, that there is absolutely no evidence whatsoever indicating that Ms. Hartnett had any knowledge of, let alone involvement in, the misappropriation of funds from the Trust Account.

The court, finding no evidence to support the conclusion that Ms. Hartnett committed any of the predicate acts alleged or was otherwise connected to the fraudulent scheme, finds that she has not taken any action as part of a pattern of racketeering activity. The claim as to her under § 1962(c) thus fails.

### 2. Conduct

The court also believes that summary judgment is appropriate on this count based on Plaintiff's failure to identify a genuine issue of material fact on the required prong of Defendant Hartnett's conduct within the meaning of the statute. As used in the statute, "conduct" requires some degree of direction in the affairs of an enterprise.[6] <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993). Participating "directly or indirectly" in the conduct of the enterprise's affairs means that the person or entity must have "*some* part in directing the enterprise's affairs." <u>Id.</u> (emphasis in original).

Plaintiffs argue that Ms. Hartnett was associated with and participated in the alleged RICO enterprises through two "enterprises affecting commerce"—Chapman Law and her

423 (5th Cir.1983), both of which held on the narrow issue before the court that where the predicate act is mail fraud, the defendant need not personally cause the mails to be used or handle the mail himself in order to be connected to the fraudulent scheme. Thus, the court has significant reservations that Plaintiffs' argument resonates in the context of this case.

6 As noted above, the court assumes without deciding that Chapman Law and the Chapman-Hartnett union qualify as enterprises within the meaning of the RICO statutes.

marriage to Mr. Chapman. Acknowledging that Ms. Hartnett did not have primary responsibility for the law firm, Plaintiffs argue that her accounting work for Chapman Law, both before and after March 2014, as well as her voluntary decision to serve as its Rule 30(b)(6) representative in this lawsuit, nonetheless constitute an indirect role in managing the affairs of the firm. As evidence, Plaintiffs cite the undisputed facts that Ms. Hartnett: 1) served as Chapman Law's Rule 30(b)(6) representative (Hartnett 30(b)(6) at 5:19-6:11); 2) admitted that she was the person with the most knowledge of Chapman Law's trust and accounting procedures and the person with the most knowledge about Chapman Law's bank accounts (and the flow of funds therein) from 2012 to present (Hartnett 30(b)(6) at 8:1-16); 3) conducted the review of Chapman Law's accounting in March 2014 when Smith terminated Chapman and Chapman Law (Hartnett 30(b)(6) 6:21-23); and 4) worked at Chapman Law prior to March 2014 "in the capacity of an accountant who was assisting Mr. Chapman handling legal matters, as opposed to an administrator." (Hartnett 30(b)(6) at 10:25-11:12). Again, the court finds that Plaintiffs have done nothing more than establish undisputed facts in this case that do nothing to support a finding of a violation of 18 U.S.C. 1962(c). Ms. Hartnett has testified that she knew nothing about the salary and expense agreements between Mr. Chapman and Mr. Smith regarding Chapman Law, (Hartnett 30(b)(6) 27:14-25), and that she had never seen either the trust or the operating account prior to March 2014. (Id. 11:19-22). Though she now knows details of Chapman Law's financial situation because she has undertaken a review of its accounting, there is no evidence to support a finding that she had any part in directing any affairs at Chapman Law, financial or otherwise. Reves, 507 U.S. at 179.

As to her participation in the Chapman-Hartnett union (her marriage), Plaintiffs argue that Ms. Hartnett "directed the affairs of the enterprise" by virtue of the facts that she shares a joint bank account with Mr. Chapman and formerly shared rent payments with him on the house they cohabitated prior to marriage. The court finds that, even assuming that her marriage is an enterprise, such evidence merely establishes commonplace participation in a marriage, not that Ms. Hartnett directed the affairs of her marriage. The fact that she shares a bank account with her husband (which apparently has no connection to the misappropriated funds) and that she shares in living expenses with him does nothing to support a claim that she participated in or conducted the affairs of her marriage through a pattern of racketeering.

In sum, the court finds that the § 1962(c) claims as to Ms. Hartnett fails because, even in the light most favorable to Plaintiffs, a rational trier of fact could not find that she committed any predicate acts to establish a pattern of racketeering activity, or that she conducted or participated in the affairs of an enterprise through a pattern of racketeering. <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985); <u>United States v. Norton</u>, 17 Fed. Appx 98, 101 (4th Cir. 2001). Finding no genuine issues of material fact on this claim, the court will dismiss Count Three as to Ms. Hartnett.

### C. Count Four—Violation of 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) makes it unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of that section. While this provision does not require any overt act by the defendant, "[t]he partners in the criminal plan must agree to pursue the same criminal objective," even if each conspirator does not agree to commit or facilitate the entire substantive offense. <u>Salinas v. United States</u>, 522 U.S. 52, 63 (1997). "A conspirator must intend

to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense….[o]ne can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." Id. at 65. Thus, to find a violation of § 1962(d), a plaintiff must show that "each defendant agreed that another co-conspirator would commit two or more acts of racketeering." TM, LLC v. Anderson, No. 2:11-CV-00071-FL, 2012 WL 4483180, at *2 (E.D.N.C. Sept. 27, 2012) (quoting United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990)).

Here, Plaintiffs have failed to offer any evidence whatsoever as to any agreement to the alleged conspiracy on the part of each defendant, a necessary component of this count. See Walters v. McMahen, 795 F. Supp. 2d 350, 356 (D. Md. 2011) aff'd, 684 F.3d 435 (4th Cir. 2012) (dismissing 1962(d) claim where "Plaintiffs fail[ed] to detail the personal agreement or involvement of each defendant."). Plaintiffs ask the court to deny summary judgment on this count based on the fact that Mr. Chapman bought expensive items for Ms. Hartnett. See Pl. Mem. Opp. Summ. Judg. (#113) at pp. 8-9. This the court will not do. Because Plaintiffs have put forth no evidence to allow a reasonable jury to return a verdict in its favor, summary judgment is appropriate and the court will therefore dismiss Count Four as to Ms. Hartnett.

## V.     THE PATTERN REQUIREMENT AND GARDEN VARIETY FRAUD

The court has also considered the arguments put forth by Ms. Hartnett regarding whether the allegations in this case are appropriate for consideration under RICO. As to the "pattern" requirement and the appropriateness of asserting a RICO claim in a civil action, the Fourth Circuit has cautioned:

> it is possible for defendants to be guilty of RICO violations if they commit two or more acts of mail or wire fraud and the acts are sufficiently related and sufficiently continuous. However, we are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the

mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity.

Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). Here, although Plaintiffs allege multiple instances of wire fraud and money laundering by Mr. Chapman over the course of several years, the court is mindful that the Fourth Circuit "[has] reserved RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." Foster v. Wintergreen Real Estate Co., 363 F. App'x 269, 273 (4th Cir. 2010) (citing Al-Abood, 217 F.3d at 238) (finding that the claims constituted "garden-variety fraud" where Plaintiffs alleged misrepresentation or failure to disclose material facts about specific properties, and breach of fiduciary duties). See also Al-Abood, 217 F.3d at 238 ("the narrow focus of the scheme here—essentially a dispute between formerly close family friends— combined with the commonplace predicate acts persuades us that the facts here do not satisfy the pattern requirement."); Baker v. Sturdy Built Mfg., Inc., No. CIV A 3:07CV212-HEH, 2007 WL 3124881, at *4 (E.D. Va. Oct. 23, 2007) ("Plaintiffs' Complaint boils down to a series of contract disputes between a construction company and its disgruntled customers. RICO was never intended to be applied to commonplace commercial controversies."). Ultimately, the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).

This case is essentially a dispute between friends-turned-business colleagues over business relationships that, by all accounts, severely soured. The central allegations in this case revolve around Mr. Chapman withdrawing funds from the Trust Account on several occasions

and making personal purchases unrelated to his law practice with such funds. Ms. Hartnett is associated with such allegations by virtue of her marriage to Mr. Chapman, her accounting work for Chapman Law in connection with this lawsuit, and her own business and personal relationship with Mr. Smith, which required travel to North Carolina.

While the court refrains from deciding at this time whether the claims asserted in this case are properly brought under RICO or whether they constitute garden variety fraud, it will continue to consider the relevant standards articulated by the Fourth Circuit as this case progresses.

## VI. CONCLUSION

After careful consideration, the court finds that no genuine issue as to any material fact exists on the RICO claims against Ms. Hartnett, that no reasonable jury could return a verdict for Plaintiffs on such claims, and that Defendant Hartnett is therefore entitled to judgment as a matter of law.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Taryn Hartnett's Motion for Summary Judgment (contained within (#89)) as to the Civil RICO claims (Counts I, III-IV of Plaintiffs' Complaint (#1)) is **GRANTED** and such claims are **DISMISSED** as to Defendant Hartnett.

Signed: August 26, 2015

Max O. Cogburn Jr.
United States District Judge